In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 20-2803

MICHELLE JAUQUET, individually
and as legal guardian of "Student A,"
her minor child,

*Plaintiff-Appellant*,

*v.*

GREEN BAY AREA CATHOLIC EDUCATION, INC.,

*Defendant-Appellee*.

———————

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 1:20-cv-00647 — **William C. Griesbach**, *Judge*.

———————

ARGUED FEBRUARY 12, 2021 — DECIDED MAY 7, 2021

———————

Before RIPPLE, HAMILTON, and ST. EVE, *Circuit Judges*.

ST. EVE, *Circuit Judge*. Before the arrival of the COVID-19 pandemic in the spring of 2020, Plaintiff Michelle Jauquet's daughter, "Student A," was already experiencing an exceedingly difficult eighth grade year at Notre Dame of De Pere Catholic Middle School in Wisconsin. One of her classmates, "Student B," repeatedly and inappropriately targeted Student

A with sexually suggestive harassment beginning in the fall of 2019 and continuing into the spring of 2020. As a result of this bullying, Jauquet brought this suit on behalf of herself and her daughter, alleging Title IX violations by the operator of the students' school, Defendant Green Bay Area Catholic Education, Inc. ("GRACE"), as well as breach of contract and negligence claims under Wisconsin state law. The district court dismissed Plaintiffs' Title IX claim with prejudice for failing to state a claim and declined to continue exercising supplemental jurisdiction over the state law claims. This appeal followed.

For the reasons explained below, we affirm the district court's dismissal order.

## I. Background

Over the course of several months between 2019 and 2020, Student B subjected Student A to vile and offensive bullying, both in school and online. As described in the complaint, Student B began harassing Student A on a weekend school trip in September 2019. During that trip, Student B repeatedly called Student A a "slut" and a "skinny bitch" and encouraged other classmates to do the same. On other occasions, Student B ridiculed Student A for her weight and appearance, including by telling other classmates in a group chat on Snapchat (an app known for its ability to send disappearing messages[1]) that Student A "would be hot" if she "weren't 50 pounds."

---

[1] *See United States v. Kushmaul*, 984 F.3d 1359, 1361 n.3 (11th Cir. 2021) ("Snapchat is a camera application for smartphones that allows users to, among other things, send disappearing images to other Snapchat users.")

Student A and her mother did not initially report this harassment to school officials, as Student A feared retaliation from Student B and his friends. Jauquet, however, requested a meeting with the school principal, Molly Mares, when Jauquet discovered sexually suggestive and vulgar posts on Student B's Instagram account, another social networking service.[2] Though these particular posts were not targeted at her daughter, Jauquet was concerned by the graphic nature of the posts. Jauquet also learned that Student B had texted a picture exposing his naked genitalia to a female student at another school; the photo made its way back to students at Notre Dame, who then widely shared the picture. When Jauquet met with Mares in December 2019, Mares agreed that the posts and shared images were unacceptable.

After Jauquet's meeting with Mares, Student B escalated his cruel and vicious campaign against Student A. Days before their winter vacation, Student B told his classmates that they should "buy [Student A] a rope and teach her to use it," insinuating that the girl should hang herself. These comments caused Student A to experience "serious emotional distress" and she emailed her mother in the middle of the school day for help. Mares met with Jauquet and Student B's parents that same day. The complaint alleges that Mares "coached" Student B into giving a "rote" apology to Student A. Mares also suspended Student B for three days, which fell on the final three days before winter vacation.

---

(citing Create a Snap, Snapchat, https://support.snapchat.com/en-US/a/capture-a-snap).

[2] *Dancel v. Groupon, Inc.*, 949 F.3d 999, 1002 (7th Cir. 2019).

Unsatisfied with the lack of "any protective or restorative measures or other victim services" for Student A, Jauquet met with the President of GRACE, Kim Desotell, and the school's police liaison the next day. When the police liaison denied that she had jurisdiction over the matter, Jauquet filed a complaint with the Brown County Sheriff's Office, and the Sheriff's Office issued a juvenile citation to Student B.

Frustrated by what Student A's family saw as an inadequate response from Notre Dame and GRACE, Student A's grandfather sent multiple emails to school and diocese leadership about the situation. Jauquet also threatened to pull Student A and her sister from the school. Desotell responded by forwarding the necessary transfer paperwork to Jauquet.

Ultimately, Student A and her sister remained at Notre Dame, and their mother continued to press Desotell to take stronger measures to protect her daughter from bullying at the school. In response, Desotell sent an email to all eighth-grade boys explaining that the school would not tolerate bullying. Desotell further offered to move Student A's seat away from Student B's. Desotell maintained that GRACE had not offered victim services to Student A, because Student A did not appear to need them—she had said that she was doing "okay for now" during a meeting. So at Jauquet's urging, Desotell met with Student A again, which the complaint acknowledges was "helpful" to some degree. The complaint also alleges, however, that Desotell used the meeting to criticize the Jauquet family and Ms. Jauquet in particular for "coach[ing] her daughter to be more emotional."

Beyond the allegations about the interactions between Student A and Student B, the complaint also explains that this bullying was part of a pattern of behavior for Student B. Two

years prior, Student B had bullied another male student using anti-LGBTQ slurs. In another example, Student B referred to a student suffering from cancer as "the hunchback of Notre Dame."

The complaint also describes school policies and practices that Plaintiffs believe foster a "boys will be boys" atmosphere at the school. The complaint accuses GRACE of "cultural tolerance of improper and in some cases illegal male sexual behavior under the traditional mantra 'boys will be boys.'" The complaint suggests the school imposes a more restrictive dress code on girls than boys as evidence of the school accommodating "rape culture" whereby "male students are not expected to bear responsibility for controlling sexual arousal or keeping their sexual behaviors within accepted moral or legal boundaries." In addition, the complaint alleges that the school tolerates both poor academic performance and "obscene, disrespectful, and disruptive behaviors" from boys that it does not tolerate from girls. This situation "emboldens students like [Student B] to escalate harassing behaviors, including sexual ones."

The district court dismissed Plaintiffs' Title IX claim finding that the complaint "fail[ed] to allege the school was deliberately indifferent to the alleged harassment" and that the "allegations [were] too vague and indefinite to state a claim for sexual discrimination or harassment on the part of the school." On appeal, Plaintiffs challenge the district court's dismissal of their complaint for two reasons. First, they argue that the district court improperly narrowed their claim of direct discrimination by Notre Dame. Second, they argue that the district court's ruling on Plaintiffs' indirect discrimination claim was contrary to the facts pled in the complaint.

## II. Discussion

We review a district court's dismissal of a complaint de novo, and the decision to dismiss a claim with prejudice for an abuse of discretion. *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333, 335 (7th Cir. 2018). The Court may affirm on any ground supported by the record. *Id.*; *see also Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 773 (7th Cir. 1995).

In reviewing a motion to dismiss based on Federal Rule of Civil Procedure 12(b)(6), the Court "construe[s] all allegations and any reasonable inferences in the light most favorable to the plaintiff." *Dix v. Edelman Fin. Servs., LLC*, 978 F.3d 507, 512 (7th Cir. 2020) (per curiam). "[W]hile a complaint does not need 'detailed factual allegations' to survive a 12(b)(6) motion to dismiss, it must allege sufficient facts 'to state a claim to relief that is plausible on its face.'" *Id.* at 512–13 (quoting *League of Women Voters of Chicago v. City of Chicago*, 757 F.3d 722, 724 (7th Cir. 2014); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). At the motion to dismiss stage, plaintiffs must set forth "adequate factual detail to lift [their] claims from mere speculative possibility to plausibility." *Schillinger v. Kiley*, 954 F.3d 990, 994 (7th Cir. 2020) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### A. Whether the district court correctly dismissed Plaintiffs' Title IX claims

Title IX provides that: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). "The Supreme Court has interpreted Title IX to provide individual plaintiffs with an

implied private right of action to pursue claims of gender discrimination in federal court and has recognized a number of claims that constitute discrimination." *Doe v. Columbia Coll. Chicago*, 933 F.3d 849, 854 (7th Cir. 2019) (citing *Cannon v. Univ. of Chicago*, 441 U.S. 677, 689 (1979)).

A plaintiff may allege a "direct" or "institutional" Title IX violation by pleading facts to show that the school itself discriminated against a person on the basis of their sex. *See id.* A plaintiff may also pursue a theory of "indirect" discrimination by way of student-on-student harassment that is so severe that the harassment functionally excludes a student from school activities on the basis of sex. *See Davis Next Friend LaShonda D. v. Monroe County Bd. of Ed.*, 526 U.S. 629 (1999). The district court reviewed Plaintiffs' complaint for both of these theories of Title IX discrimination and found that Plaintiffs had not alleged facts to support either theory.

### 1. Indirect Sex Discrimination

In *Davis*, the Supreme Court held that victims of student-on-student harassment could sue their school for damages if the school had been deliberately indifferent to severe and pervasive harassment of which the school had actual knowledge. 526 U.S. at 648. "[R]ecipients [of federal funding] may be liable for their deliberate indifference to known acts of peer sexual harassment." *Id.* But, "[k]eeping in mind how thoughtless and even cruel children can be to one another, the Supreme Court has interpreted both Title VI and Title IX to impose a demanding standard for holding schools and school officials legally responsible for one student's mistreatment of another." *Doe v. Galster*, 768 F.3d 611, 613–14 (7th Cir. 2014); *see also Columbia Coll. Chicago*, 933 F.3d at 857 (noting that deliberate indifference is a "high bar"). First, the school or school

officials must have had actual knowledge of sex-based harassment. *Galster*, 768 F.3d at 613–14. Second, the harassment must have been "so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." *Id*. (quoting *Davis*, 526 U.S. at 650). Third, the school must have been deliberately indifferent to the harassment. *Davis*, 526 U.S. at 648. "To ensure that school administrators continue to enjoy the flexibility they require in making disciplinary decisions, the school will not be held liable unless its response to harassment is clearly unreasonable in light of the known circumstances." *Johnson v. Ne. School Corp.*, 972 F.3d 905, 911–12 (7th Cir. 2020) (internal quotations omitted) (citing *Davis*, 526 U.S. at 648); *Gabrielle M. v. Park Forest-Chicago Heights, Ill. Sch. Dist. 163*, 315 F.3d 817, 824–25 (7th Cir. 2003) (school's response to sexualized bullying of victim student was not clearly unreasonable "in light of each of the immediate disciplinary and preventative steps the school district [took] in response to [the bully's] conduct[.]").

The Supreme Court has cautioned that the cause of action for indirect Title IX claims is limited. Allowing these kinds of suits "does not mean that recipients [of federal funds] can avoid liability only by purging their schools of actionable peer harassment or that administrators must engage in particular disciplinary action." *Davis*, 526 U.S. at 648. Moreover, victims of harassment do not have a "Title IX right to make particular remedial demands. … In fact, as we have previously noted, courts should refrain from second-guessing the disciplinary decisions made by school administrators." *Id.* (citing *New Jersey v. T.L.O.*, 469 U.S. 325, 342–43 n.9 (1985)); *Gabrielle M.*, 315 F.3d at 825 (same).

Here, the parties agree that deliberate indifference is the only issue in dispute. GRACE has conceded that it is subject to Title IX, and GRACE does not contest that it had actual knowledge of the harassment. In its motion to dismiss, GRACE argued that the harassment of Student A did not rise to the level of "depriv[ing her] of access to the educational opportunities [and] benefits provided by the school." *Galster*, 768 F.3d at 614. GRACE, however, has correctly abandoned that line of argument on appeal; we agree with Plaintiffs that the cruel bullying was severe and pervasive. *See id.* at 613–14. GRACE now agrees that "'[d]eliberate indifference' is the [only] element at issue in this appeal."

Although we condemn Student B's behavior, we agree with the district court that GRACE was not deliberately indifferent to Student A's harassment. The school responded promptly to Plaintiffs' bullying complaints, and the complaint does not contain any allegations that the bullying persisted beyond early January 2020, even though plaintiffs did not file their complaint until April. *See Gabrielle M.*, 315 F.3d at 825 (school district did not act with deliberate indifference as a matter of law where the district promptly disciplined a school bully). "This is not a situation where the school 'learned of a problem and did nothing.'" *Johnson*, 972 F.3d at 912 (quoting *Rost ex rel. K.C. v. Steamboat Springs RE–2 Sch. Dist.*, 511 F.3d 1114, 1122 (10th Cir. 2008)). In this case, school officials suspended the primary perpetrator, Student B, for several days in December 2019. In addition, Plaintiffs met with school officials several times, including once for the express purpose of allowing Student A to voice her concerns as a victim of bullying. School officials offered to change her seat in class and facilitated an apology from Student B. These acts all demonstrate that the school was not deliberately indifferent to

Student A's harassment; the school's response to the harassment was not "clearly unreasonable in light of the known the circumstances." *Johnson*, 972 F.3d at 911–12; *Gabrielle M.*, 315 F.3d at 825.

Plaintiffs do not believe that the school took sufficient action. But even if the school's response to the harassment was not as fulsome as a parent would want for her child, "[a] negligent response is not unreasonable, and therefore will not subject a school to liability [under Title IX]." *Johnson*, 972 F.3d at 911–12. Here, Plaintiffs seem particularly upset that Student B was not outright expelled and that Principal Mares "coached" him into issuing an apology to Student A. But, *Davis* makes clear that Title IX liability does not give victims license to demand particular remedial actions from the school. *See Davis*, 526 U.S. at 648.

In *Davis*, the Supreme Court specifically warned courts not to intrude upon the educational decisions made by school officials. 526 U.S. at 648. And this Court has recently emphasized this point:

> [W]e will not second guess a school's disciplinary decisions—even a school's decision not to impose any disciplinary measures—so long as those decisions are not clearly unreasonable. Indeed, judges "make poor vice principals." And in appropriate cases, courts can "identify a response as not 'clearly unreasonable' as a matter of law."

*Johnson*, 972 F.3d at 912 (citing *Davis*, 526 U.S. at 648–49; *Stiles ex rel. D.S. v. Grainger Cty., Tenn.*, 819 F.3d 834, 849 (6th Cir. 2016); *Estate of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982,

996 (5th Cir. 2014)); *see also Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093, 1105 (9th Cir. 2020).

Here, the district court followed this guidance in dismissing Plaintiffs' Title IX claim for student-on-student harassment. Although we recognize that Student B's inappropriate and unacceptable comments made the challenging years of junior high even more stressful for Student A, the school quickly disciplined Student B and his bullying stopped. While it is understandable that Jauquet would have preferred the school to take even more decisive action in punishing Student B for his behavior, Title IX does not require a school to satisfy a victim's parent's remedial requests.

### 2. Direct Sex Discrimination

The district court also analyzed whether Plaintiffs had alleged a claim for Title IX discrimination perpetrated directly by GRACE but found that Plaintiffs' "allegations are too vague and indefinite to state a claim for sexual discrimination or harassment on the part of the school." *Cf. Columbia Coll. Chicago*, 933 F.3d at 856 (plaintiff failed to allege "facts that could lead to a reasonable inference that [the defendant school] denied him an educational benefit because of his sex.").

Plaintiffs contend that the school culture at Notre Dame fosters an environment that discriminates against female students on the basis of their sex. According to the complaint, GRACE generally permits "gender discriminatory policies and practices that, in addition to their direct impacts on Plaintiff's daughter, also support sexual bullying and allow it to flourish." To support these allegations of direct sex discrimination, Plaintiffs point to Notre Dame's dress code, which

Plaintiffs maintain is more restrictive of girls' clothing; to the higher academic standards that are girls are held to compared to boys at GRACE; and to GRACE's tolerance of a high level "obscene, disrespectful, and disruptive behavior[]" from boys that it would not tolerate from girls. At oral argument, Plaintiffs also pointed to Student A's experience at Notre Dame as further support for their allegations of discriminatory policies and practices.

"A [direct] Title IX discrimination claim requires a plaintiff allege (1) the educational institution received federal funding, (2) plaintiff was excluded from participation in or denied the benefits of an educational program, and (3) the educational institution in question discriminated against plaintiff based on gender." *Columbia Coll. Chicago*, 933 F.3d at 854 (citing *Doe v. Purdue Univ.*, 928 F.3d 652, 657 (7th Cir. 2019)).

Here, the parties do not dispute that GRACE receives federal funding and is subject to Title IX's requirements. With regard to the second element of exclusion from participation in or denial of the benefits of an educational program, the complaint does not specify what program or benefit Student A was not able to access because of the dress code or the differences in the school's expectations for students. In fact, the complaint repeatedly emphasizes that Student A is an honor roll student and does not suggest her academic status changed as a result of the practices and policies alleged. While it is *possible* as a general matter that a school's dress code, culture, and response to bullying *could* exclude a student from educational benefits on the basis of her sex, Plaintiffs have not pled facts in this case to support an inference that GRACE excluded Student A because of her sex. The facts alleged in the complaint do not support a reasonable inference that this

particular plaintiff was excluded from the benefits of an educational program. *See Schillinger*, 954 F.3d at 994.

Even if Plaintiffs were able to satisfy the second element of a direct Title IX claim, the complaint also fails to allege facts to support the contention that GRACE discriminated against Student A on the basis of her sex. At the motion to dismiss stage, plaintiffs must set forth "adequate factual detail to lift [her] claims from mere speculative possibility to plausibility." *Id.* (citing *Iqbal*, 556 U.S. at 678).

In *Columbia College*, the district court dismissed a male plaintiff's Title IX claims for failing to state a claim, where he alleged that his college deprived him of access to his education through its handling of a female student's accusation of sexual assault against him and we affirmed. 933 F.3d at 854–55. There, the plaintiff accused the school of discriminating against him through its process for handling sexual assault allegations after the school suspended the plaintiff for one year following a formal disciplinary hearing, during which the plaintiff was given an opportunity to present exculpatory evidence. *Id.* at 853. In addition, the plaintiff charged that the school fostered an "anti-male" campus culture through the school's approval of various campus events that showed its commitment to preventing and remedying sexual violence. *Id.* at 855. But we found that "there [was] no way to plausibly infer that Columbia's investigation or adjudication was tainted by an anti-male bias. [The plaintiff] fail[ed] to allege particularized facts that could lead to a reasonable inference that [the school] denied him an educational benefit because of his sex." *Id.* at 856.

Here too, Plaintiffs' allegations of GRACE's direct sex discrimination are too vague and conclusory to state a claim for

relief as required by Federal Rule of Civil Procedure 8 because there are insufficient facts to "draw [a] reasonable inference that the defendant is liable" for Title IX sex discrimination. *Schillinger*, 954 F.3d at 994. Although Student B bullied Student A based on her sex, the complaint contains no facts to support a reasonable inference that the school's *response* was impacted by Student A's sex, or, more to the point, that GRACE denied her an educational benefit through its handling of Student B's bullying based on Student A's sex. *See Columbia Coll. Chicago*, 933 F.3d at 856. "A plaintiff cannot rely on [] generalized allegations alone, … but must combine them with facts particular to [her] case to survive a motion to dismiss." *Id.* at 855.

Plaintiffs' complaint contains several other allegations of direct discrimination that are not supported by any facts. For example, the complaint alleges that the school discriminates against female students by imposing a more restrictive dress code on girls than on boys. But the complaint does not even say what the dress code is. We have previously recognized that a dress code can form the basis of a Title IX violation, but the mere existence of a dress code, by itself, is not evidence of discrimination. *See Hayden ex rel. A.H. v. Greensburg Cmty. Sch. Corp.*, 743 F.3d 569 (7th Cir. 2014). In *Hayden*, we reversed the district court's dismissal of a plaintiff's Title IX claim that was based on a haircut policy requiring male basketball players to wear short hair. *Id.* at 572. There, we found that the school did intentionally discriminate against boys by virtue of the short hair policy. *Id.* at 583. *Hayden*, however, does not stand for the proposition that differences in dress codes necessarily violate Title IX. *See id.* at 584 (Manion, J., concurring in part and dissenting in part). "[D]iffering grooming standards are not discrimination if they are comparable." *Id.* (collecting cases).

Here, the complaint did not specify what aspects of the dress code are more restrictive for girls than for boys, either in the policy or its enforcement. There are thus no facts from which we can draw a reasonable inference that the dress code discriminates against female students. *See Schillinger*, 954 F.3d at 994.

The complaint is similarly devoid of factual support for its allegations that GRACE holds female students to higher standards of academic performance and behavior than male students. And the complaint does not contain facts to permit a reasonable inference that Student A was denied access to educational benefits because she was allegedly held to a higher standard of academic performance. Without any factual support to show that female students are treated differently than male students on account of their sex, the complaint's conclusory allegations are insufficient to survive a motion to dismiss. "Title IX requires a systemic, substantial disparity that amounts to a denial of equal opportunity before finding a violation of the statute." *Parker v. Franklin Cty. Cmty. Sch. Corp.*, 667 F.3d 910, 922 (7th Cir. 2012) (citing *Davis*, 526 U.S. at 650). Plaintiffs have not pled such a case here.

**B. Whether the district court abused its discretion in dismissing Plaintiffs' Title IX claims with prejudice and state law claims without prejudice**

The district court did not abuse its discretion in dismissing Plaintiffs' Title IX claims with prejudice. "We will not reverse a district court's decision [to dismiss a complaint with prejudice], when the court provides a reasonable explanation for why it denied the proposed amendment." *Gonzalez-Koeneke v. West*, 791 F.3d 801, 808 (7th Cir. 2015).

Here, Plaintiffs made no effort to amend their complaint or to add any specifics to the complaint, which the district court described as "vague and indefinite." Plaintiffs also did not seek reconsideration by the district court, seek leave to file an amended complaint, or otherwise request an opportunity to cure the deficiencies of their complaint. On appeal and at the district court, they have not shown or argued that the complaint could be cured with additional facts that could support a Title IX claim. Indeed, even at oral argument, Plaintiffs' counsel asserted that the complaint as drafted was sufficient. Under these circumstances, it was not an abuse of discretion to dismiss the Title IX claim with prejudice. Although leave to amend is ordinarily "freely given," we have "recognized, on many occasions, that a district court does not abuse its discretion by denying a motion for leave to amend when the plaintiff fails to establish that the proposed amendment would cure the deficiencies identified in the earlier complaint." *Id.* at 807. In this case, Plaintiffs never even requested leave to amend their complaint or for reconsideration before appealing the district court's order. As a result, they have not demonstrated how they could cure the complaint's deficiencies, so dismissal with prejudice was not unreasonable. "A district court does not 'abuse its discretion by failing to order, *sua sponte*, an amendment to [the complaint] that [the plaintiff] never requested.'" *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1008 (7th Cir. 2019) (quoting *Wagner v. Teva Pharms. USA, Inc.*, 840 F.3d 355, 359 (7th Cir. 2016)).

Without a federal claim in the case, the district court appropriately dismissed Plaintiffs' state law claims without prejudice, thereby relinquishing subject matter jurisdiction over the remaining claims. *See O'Brien v. Vill. of Lincolnshire*, 955 F.3d 616, 628 (7th Cir. 2020) (no abuse of discretion in

declining to exercise supplemental jurisdiction over state law claims); *Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904 (7th Cir. 2007) (describing the "sensible presumption" that federal courts may dismiss state law claims when all federal claims have dropped out of a case prior to trial).

### III. Conclusion

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

CERTIFIED COPY
A True Copy
Teste:
_____
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit